Good morning, Your Honors, and may it please the Court, my name is Claire Dean from Covington and Burling, here on behalf of Petitioner Zhi Ma, to seek a hearing for Mr. Ma on his asylum application. And, Your Honors, I would like to reserve two minutes for a rebuttal. Just watch the clock, Counsel. Understood, Your Honor. All individuals facing proceedings seeking to remove them from the United States are entitled to due process, including a full and fair hearing and notice of that hearing. And yet, to this day, Mr. Ma has never received a hearing on his asylum application because he trusted his immigration consultant and attorney to help him navigate the asylum process and they failed him at the most basic level. But he knew about this a long time ago and he waited eight years. Your Honors, respectfully, Mr. Ma was misguided at the time that his in absentia removal order was issued. So, I'll address the issue of timeliness, Your Honor, which I believe is what you're getting at here. Say the word misguided. Now, that's an interesting word for a layman. What's the, what do you mean by that? Your Honor, what I mean by that is that Mr. Ma received ineffective assistance from his immigration consultant and his attorney. Alright, let's be specific then. You're making an IAC claim. Yes, Your Honor. Essentially, we're making two claims here with respect to notice. First, Your Honor, petitioner contends that notice was not properly given here because the immigration consultant and attorney who advised Mr. Ma to put their address on his asylum application never notified him that the notice, or excuse me, that the hearing was pushed up by more than two months. But he acknowledges that he knew about it for a long time and then he waits eight years. And I mean, a good way to look at that is, you know, these are the type of cases that there's no motivation to get, you know, to do anything about it because everyone knows that nothing ever happens. So just wait until something, someone finds you or whatever. Respectfully, Your Honor, in this case, Mr. Ma did try to do something about this at the time that he learned about his inabstential removal order. He confronted his immigration consultant, CPI Immigration, and said that he basically found out that he had been ordered removed because his hearing date had been pushed up by more than two months. And CPI responded, even though they were the ones that advised him to put their address on the application, that they thought that Mr. Ma would receive separate notice. And they also advised him- But did he ever try to come to court? So the reason why he never came to court, Your Honor, and he did not try to come to court at that time. The reason why Mr. Ma did not do that is because at the time that he confronted CPI, CPI told him that the only legitimate excuse for missing a hearing was a medical excuse with a doctor's note. And they also advised him that if he were to go to court and explain why he missed his April 2002 hearing, that he may be arrested on the spot by immigration authorities. And Mr. Ma, who does not speak any English, is unsophisticated in the legal system, trusted CPI. And also, he didn't just take CPI's word for it. He actually went and consulted with a second law office. And that second law office also told him that the legitimate excuse for missing a hearing would be a serious illness in which a doctor would say that you were too ill to attend the hearing. So at that point, Mr. Ma did not believe that he had any other options or recourse to proceed with at that time. And he was afraid that if he went to court, he would be arrested on the spot. Now, Your Honors are correct that years did go by. And Mr. Ma- Almost a decade. It was. It was about eight years, Your Honor. And what happened during that time is Mr. Ma, around 2008, learned that his father was suffering from a life-threatening condition. And Mr. Ma, as the only child in his family, felt that he had the familial duty to return home and care for his father, despite the consequences that he might face there. And so he did. But at that point, he realized that the treatment- That pretty much undercuts his asylum claim, doesn't it? Your Honor, respectfully, Petitioner does not believe it does, because the reason why Ma was returning home to China was to care for his gravely ill father. How long did he stay in China? He was in China for about 18 months. And he only stayed for the duration of time necessary for his father's condition to improve. And so when he returned to care for his gravely ill father, he did so despite the consequences he might face, because he was the only child in his family, and he felt it was his duty to care for his father. And this Court has found that returning home to care for a gravely ill family member does not necessarily rebut the well-founded fear of persecution. And that was in the Kolobong v. Holder case and the Smolniakova v. Gonzalez case. So is that- Okay. So his motion to reopen is based on changed circumstances, because he had to go back. So based on change, why doesn't it fail as a matter of law, because the alleged change in circumstances was precipitated by his voluntary return to China? The reason why it doesn't fail is- And what's your best case for that? Is that what you just cited? That's correct, Your Honor. So in the Kolobong v. Holder case, for example, the Petitioner returned home to the Philippines for two visits to care for her gravely ill mother and then her father. And the Court found that she did not rebut a presumption of well-founded fear of persecution in that case, because she avoided drawing attention to herself at the time. She stayed in her home village for only brief periods of time, and she didn't tell her family where she was staying. And similar to Kolobong, when Mr. Ma- Let me ask you this, though. How do you respond to the government's argument that they're faulting Ma for not submitting supporting affidavits, that the BIA did not fail to take Ma's allegations as true? Respectfully, Your Honor, respondent contends that the Board was properly exercising its discretion by acknowledging the affidavit and supporting the law. Petitioner does not agree that that is what the Board did here. What the Board, in fact, did was ignore Ma's uncontroverted affidavit, which was all he was required under the law to provide. Ma's uncontroverted affidavit, far from saying that Ma remained in China for 18 months without incident or without adverse consequences, as the Board found. Instead, Ma's affidavit says, when he was there, he had to hide in his friend's home. He could not stay in his family home. He exercised extreme caution whenever he went to visit his father- Well, let me ask you this. Is the Board's error, then, that they failed to take them as true, and they weighed credibility? From your perspective, is that your best argument? Your Honors, on the change country circumstances piece of this argument, yes. The Board, this matter should be remanded back to the Board with instructions to reopen the proceedings because the Board erred in three different ways there. Well, but why, okay. Let's say, if it, if, let's just say hypothetically that we agreed that it should be remanded to apply the proper standard and not weigh the credibility, but you're asking that we order them to reopen? Why can't they apply the proper standard and make a decision whether it should be reopened? Your Honor, Petitioner would support this Court remanding back to the Board to- That's better than nothing, isn't it? Absolutely, Your Honor. But the Board made more than just a failure of improper factual finding. The Board also improperly suggested that he should have attached those corroborating affidavits that Your Honor alluded to. When this Court has previously found in Malti v. Ashcroft that such supporting affidavits from family members outside the United States are almost never easily available and thus not required, in addition, the Board's improper factual finding that he was there without incident essentially ignored the facts in the affidavit, which they were required to accept as true because the Board's decision, if you look in it, there is nothing in there that says that his affidavit was inherently unbelievable. Let me ask you this. Hypothetically, if we were to remand to evaluate under the proper standard, wouldn't the Board then have to look at whether the new allegations are qualitatively different than the evidence he presented in support of his initial asylum application? And if they weren't different, then he still wouldn't satisfy the motion to reopen, right? That's correct, Your Honor, although Petitioner contends that notice was also not proper and that ineffective assistance of counsel rises to the level of exceptional circumstances. Well, right. I know you're raising that, but if, assuming we don't find that to be very persuasive. That's correct, Your Honor. The Board, in applying the correct standard, would need to weigh whether or not the evidence that Ma presented in his uncontroverted affidavit was qualitatively different. You're down to about a minute, so you... Yes, Your Honor. Petitioner respectfully requests that this Court grant his petition for review and remand this matter back to the Board with instructions to reopen. Thank you, Your Honors. Thank you. Thank you, Your Honor. Thank you. Counsel, you may proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Alexander Lutz on behalf of the Attorney General. Your Honors, I'd like, if I could, to draw attention first to a point counsel for Petitioner made just a moment ago that echoes an argument the petitioners raised in the briefs, which is that there was no proper notice given and therefore Mr. Ma's in absentia order of removal should be rescinded because his immigration advisors failed to tell him about the time and the date of the hearing. I'd like to point out that that conflates two different statutory provisions that each outline a separate ground on the basis of which an in absentia order of removal may be rescinded. The first has to do with lack of notice and the second has to do with extraordinary circumstances such as ineffective assistance of counsel. Now that second type of motion has to be brought within 180 days. On that ground, if Mr. Ma is arguing that there was a lack of actual notice here, he needs to establish equitable tolling of the deadline. And as Your Honor, Judge Callahan pointed out, he waited inexplicably eight years before filing a motion to reopen after he knew admittedly that a problem had arisen and he knew what the problem was. Now, if Mr. Ma is arguing that there was a lack of notice here, he needs to establish  Now, if Mr. Ma is arguing that there was a lack of actual notice here, he needs to establish  Now, if Mr. Ma is arguing that there was a lack of actual notice here, he needs to establish equitable tolling of the deadline. Does the noticed issue resolve the entire case or is it just one element? Well, respectfully, Your Honor, it doesn't resolve the entire case because Mr. Ma has effectively filed two different types of motions here, a motion to rescind his in absentia order of removal and a motion to reopen his removal proceeding on the basis of changed country conditions. And we submit that he hasn't met the standard for either of those two motions, but they are treated separately. Well, what about the changed country conditions? I'd be interested in your response to counsel's arguments. Of course, Your Honor. And again, I'd like to touch on a question that Judge Callahan asked just a moment ago about comparing the evidence that was submitted below with the evidence that's submitted on motion to reopen. Now, it's axiomatic that a motion to reopen a removal proceeding based on changed country conditions has to show an objective change in country conditions between the time of the underlying proceeding and the time of the motion to reopen. So let's do a quick before and after and look at what Mr. Ma, in fact, alleged. Before his motion to reopen and his initial asylum application that he filed, I believe sometime in 2001, he said that he had started practicing Zhong Gong, a spiritual discipline, in 1994, that China cracked down on practitioners of Zhong Gong in 1999, that policemen broke into his home, slapped him, detained him for three days, and questioned him in 2001, that he was ordered to report to the police on a weekly basis. And he said at page 84 of the record, and I'm quoting here, policemen have been coming to my home since my escape, since I failed to report to them as required, and they want to get me back to get me punished. Now, on motion to reopen, he averred that the treatment of Zhong Gong practitioners in China, quote, has never been relaxed, unquote. He said that he returned and that he stayed at a friend's house, but he never explained why he did that or if he never stated anything had changed that caused him to do that. He simply stated that when he returned, he went into hiding. And he said local authorities seemed to realize that I had been home because they came to his home in September 2009 to talk to his mother and his wife and told them that if he had returned, he should turn himself in. And if they were harboring him, that they would be guilty of a crime. Your Honors, where is the change here? He said both... Now, let me, okay, let me just tell you what my concern is in terms of that. I mean, we haven't talked about this, so I'm not speaking for anyone other than myself right now. Please, Your Honor. That I've made my comments about the notice part of it. So let's just assume hypothetically that I'm not concerned that the notice, that he is concerned. On the motion regarding the changed country conditions, here's a couple of my concerns in terms of, in Malte v. Ashcroft, we held that the BIA abused its discretion when it faulted Malte for not submitting supporting affidavits. And that was one of the things that the IJ did, that the BIA did here. And that they really didn't make a determination, they didn't get to whether it was qualitatively different. So as much as it might pain me, how is this court, it appears that there was some credibility finding here. That if that was the wrong standard on motions and, you know, it's, since we've got Yang v. Lynch, and I'm not sure why that doesn't really foreclose us doing what you want us to do right here. So why don't we have to just remand it to apply the proper standard and then make that qualitative analysis and they still could determine that he doesn't qualify to reopen. Sure, Your Honor. I think I understand. And I'd like to make a couple of points in response to that question. First of all, Yang is informative in this case because it provides a good example of what it looks like when the board second guesses a petitioner's credibility or second guesses a petitioner's evidence in adjudicating a motion to reopen. In that case, the board specifically stated that the petitioner, and I'm quoting now from Yang, has not shown why the board should now accept the statements offered. Or in another case called Basin, B-H-A-S-I-N, that this court cited in Yang, the board said that the petitioner's declaration, and again this is a direct quote, the declaration was self-serving and not highly probative. In situations where the board has violated, where this court has held the board violated its duty to take as true a petitioner's affirmance on motion to reopen, we see the board specifically rejecting it or doubting it or imposing some kind of a credibility test. But here we know the board didn't do that for two reasons. Number one, they didn't use anything like the kind of language we saw in Yang or in Basin. It didn't specifically say that it was rejecting anything Mr. Ma said. And secondly, while this decision certainly could have been clearer on this point, nothing the board said was inconsistent in any way with the actual facts that Mr. Ma averred. Well, except for in your supplemental brief, you suggest the possibility that the BIA did not fail to take Ma's allegations as true in faulting him for not supporting affidavits. But in, I'm not sure how you say this, Basin versus Gonzales, we found this court a similar argument to strain credulity in light of the plain language of the BIA's decision. How is this case really different? Well, because the plain language of the BIA's decision there said the declaration was self-serving and not highly probative. Here the board didn't make any similar comment about the affidavits that Mr. Ma submitted. It weighed the evidence Mr. Ma submitted, or excuse me, the affirmance that Mr. Ma submitted. But it faulted him for not submitting supporting affidavits. So that sort of tells you, hey, it's not enough what you've done, which is weighing the credibility. Well, respectfully, Your Honor, I'd like to... It's saying it's not enough. I understand Your Honor's concern, and I'd like to separate out two separate questions here. The first is whether the board takes as true what a petitioner averves. The second is whether what the petitioner averves meets the heavy burden that's necessary to justify reopening. All right, but let me say it in another way. Sure. If you were here and the board had said, we accept everything that you say is true, we're not requiring you anything additional, but we're looking at what you alleged before, and it's not different than what you're alleging now. So we're going to deny your motion to reopen. Would you have a better case? I think we would certainly have a clearer board decision to argue from, Your Honor. Okay. But I don't think that our case is weakened by the board's failure to say that because the lack of supplemental affidavits, or rather, let me put it this way. The board's noting that the lack of affidavits or that the fact that Mr. Ma was able to live in China for 18 months without anything happening to him, the fact that the board noted that is not inherently inconsistent with the board having taken everything Mr. Ma says is true. The board has to take the facts of his averments as true, but not the conclusion that Mr. Ma now advances, which is that his evidence was enough. If that were the case, I'm sorry, Your Honor. What about the Calabong case that you heard opposing counsel raise? Well, Your Honor, the cases that Mr. Ma cites there, Calabong and Somolniakova, those cases show that return trips to a country can't be the only reason that the board denies an application for asylum. But those cases are an opposite where that's not what the board, in fact, did here. Here the board took everything Mr. Ma said is true, but then in applying the law to determine whether his averments were enough to meet his heavy burden for reopening, the board said, well, look, you talk about something that your family experienced when the police went to their house, but you weren't there, and you submitted no declaration from them about what happened. And look, also, you were able to return to your home country for 18 months without anything happening to you. So your averments here aren't enough to meet your legal heavy burden. And I'm quoting there, INS v. Abadou from the Supreme Court, your heavy burden to justify reopening. And also, furthermore... Counsel? Yes, Your Honor. This is Judge Paulson. Before you conclude, in your view, did the BIA address the IAC claim? Your Honor, in our view, the board did not address every aspect of it, but the board did clearly in one paragraph address the issue of equitable tolling. And that is a necessary component of an ineffective assistance of counsel claim in this case because Mr. Ma went over 180 days, which was his deadline for that type of motion, by about 7 1⁄2 years without explaining what he was doing during that 7 1⁄2 years. So it's our position that the board didn't address every aspect of that claim, but the one aspect it did address is fully dispositive of that issue. I see I'm over time, Your Honors. We respectfully request that the court deny the petition for review. Thank you, Counsel. Thank you. Christine, you have about a minute reserved. Very briefly, Your Honors. I'd like to address the point that Judge Rawlinson just spoke to, the issue of addressing the ineffective assistance of counsel claim. The board's decision doesn't reference it at all, in fact, and the respondent tried to justify that in the briefing by saying that Ma didn't properly raise such a claim. That is not the case here, Your Honors. It's very clear from Ma's pro se papers that he was claiming that the reason he did not receive notice was due to ineffective assistance of his counsel, and petitioner contends that equitable tolling would be appropriate here under that ground. For 7 1⁄2 years? Your Honor, respectfully, I understand it's a very long time, but this is more like the Fajardo v. INS case in which Fajardo was accompanied by an immigration consultant to her asylum hearing. The immigration consultant used their address on her asylum application and did not notify Fajardo of her asylum hearing date, and as a result, she missed the hearing. And the court found it was appropriate to equitably toll in that case for over 4 years, not quite 8, but over 4 years, until Fajardo became aware of the deceptive actions and the harm that resulted from them. Your Honors, thank you very much for the opportunity for oral argument. And, Counsel, thank you for taking this case on a pro bono basis. We appreciate it. We appreciate that it helps on the issues, and thank you both. You did an excellent job. Thank you, Your Honor.
judges: O'scannlain, Rawlinson, Callahan